And we move to the sixth case this morning, U.S. versus Abdullah. All right. Counselor here, Mr. Azari. Good morning, Your Honor. You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. My name is Sammy Azari, and I'll be presenting the oral arguments on behalf of my appellant, Mr. Yousef Abdallah. Today, we're asking Your Court to remand the case for resentencing for two reasons. Mr. Azari, can I ask you one question regarding... I just want to make sure I understand your argument. Your argument is that we should ignore the waiver in this case, that we should not apply the appeal waiver, and we should reverse the case for resentencing and hold the government to its end of the bargain under the plea agreement. Right? That's your argument. Not that we should reverse and just get rid of the entire plea agreement altogether, and then your client can go to trial or negotiate a new deal with the government. That's not what you want, right? Correct, Your Honor. That's not what we're seeking, and I must apologize in advance for my voice, Your Honors. But the only argument that I saw in your brief that even remotely addressed the appeal waiver was in footnote one, and then there was... I didn't see a reply brief. I assume you did not find... Okay, so can you talk about footnote one and why this just seems to me like a very straightforward waiver case, and why should we not apply the waiver and dismiss the appeal? Sure, Judge, and I'm happy to address that, and the issue that encompasses that actually bleeds into multiple arguments that I'm going to be making today, but specifically, it's the language barrier that was the issue that... The issue regarding the appeal waiver is whether he knowingly and intelligently waived it. But he had a lawyer... Wait a minute. He had a lawyer at the plea hearing, right? Correct, Your Honor. He did have a lawyer. And I looked at the docket here. It looked to me like he didn't file a motion for an interpreter until before the sentencing hearing, not the plea hearing. Correct, Your Honor, and I'll address that issue. So, but... That sounds like double waiver to me. Is the theory, Mr. Azzarri, that he could knowingly and voluntarily plead guilty and the plea agreement is valid, but that the appellate waiver is not valid? We're not saying that there's only one portion of it that's invalid, but we're only seeking to achieve a re-sentencing, Your Honors. So, what happened was that he executed the plea agreement, and Your Honors are correct that he did have an attorney at the plea agreement. After the plea agreement, there was a realization by his attorney that he may not have understood everything based on the language barrier. And the issue is that he could not have reasonably anticipated what was to come from the district court and knowingly and voluntarily waive it. More dispositively on the waiver issue, there's a question as to whether or not he even understood what he was signing. And in the government's own brief, Abdallah said he mostly understood the plea agreement, not all of it. And when asked, when the court asked if Mr. Abdallah understood what it was during the change of plea proceedings, his response was most things, yes. And that apparently was enough to satisfy the district court that he understood everything that was transpiring. So, he understood the parts that were favorable to him, but the parts that were unfavorable to him, he didn't understand them at all, right? That's the argument. No, we're not alleging that, Your Honor, but we're alleging that he didn't understand everything that was happening. And so, just to level the playing field, I mean, an interpreter should have been one of the first to understand what was going on in the plea agreement. Counsel, how long had he been in business? Me? No, not you. You're lying. Oh, Your Honor, I don't know the answer to that about how long he had been in business. Quite a long time, right? Yes, it was, Judge. And, but he still couldn't speak English well enough to understand what was going on in the plea agreement? Well, so, but there's different levels of English, right? And the district court in this case had every available resource to determine what level of English Mr. Abdallah spoke. And if I could just compare the differences between not having an interpreter in sentencing and not having an interpreter to change a plea, those are two drastically different situations. And the government notes in its brief that Mr. Abdallah was able to communicate in English with customers that came into a store, but communicating with someone on layman's terms that's coming into your the legal effects of a sentencing hearing in U.S. district court. A change of plea is a little bit different. It's a Q and A with the judge and any exhaustive preparation with an attorney can mask any issues that may have occurred with the language barrier. But a sentencing is different. It's a free flowing discussion with arguments being made by both sides. Prosecutors make statements that the defendant needs to be able to understand and respond to. He has a right to make an allocution statement, which is very important for the judge in fashioning a sentence. And understandably, the defendant's nerves are higher at a sentencing with the added pressure making it only more difficult for someone to communicate in something other than their native language. So the fact that the judge made a perfunctory decision to not grant an interpreter, there's no simpler decision than a trial. Mr. Rosario, you're saying it was perfunctory. Don't we also have the pre-sentence reports and I think more versions than I've ever seen in one case. And in each one indicating that Mr. Rosario communicated to the probation officer that he was sufficiently fluent in English so that they could proceed in English. And that's true, Your Honor. But Mr. Abdallah's self-assessment of his ability to speak English doesn't make it so. He has some modest facility with English. I understand the point, but given the abuse of discretion standard of review we apply to questions, reading that as a perfunctory decision by the district court doesn't seem to quite capture the reality. Well, we would argue that it is, Judge, because it was such a simple decision with no downside whatsoever. As the government tasked the egonologist in its own brief, there was no prejudice whatsoever. The request that was being made was fairly administrative. And for the judge to not grant an interpreter, which is the government would acknowledge, there's no prejudice to anyone whatsoever other than the meal financial cost of appointing an interpreter. So why the district judge would deny it based on his determination that Mr. Abdallah speaks English sufficiently only prejudice Mr. Abdallah. So that's why we would argue that there wasn't an error with the trial court's decision, Judge. And moving on to the next argument regarding the enhancement, the district court took away acceptance of responsibility and added an enhancement for obstruction of justice. Now the initial reliance from the district court is from the pre-sentence report. Initially with the first two pre-sentence reports that were filed on December 17th, 2019 and January 15th, 2020, the probation department did ask for a finding of granting acceptance of responsibility. A mere six weeks after that initial PSR, a second revised PSR was filed where the probation department was not asking for either of those things. But the judge made a decision to seek the enhancement of obstruction and to take away the acceptance of responsibility despite the fact there was no fact finding process that was done, no evidentiary hearing that was conducted to determine if those were the appropriate decisions. Now the court... Did the defense ask for a fact-finding hearing on that subject? I don't recall that there was a request made for a fact-finding determination, Judge, but there was an objection made by the defense as to whether or not the obstruction should, there should be an obstruction enhancement or that the acceptance should be taken away. Is it correct, as the government has told us, that the district judge flagged the possibility of an obstruction enhancement as early as February 3rd, 2020? That the what? What was that, Judge? I'm sorry. That the district judge flagged the possibility of an obstruction enhancement as early as February 3rd, 2020. Correct. There was an entry that came out alerting all sides that the district court was going to be seeking that enhancement. At least he was raising... And that was well before both the third and fourth revised pre-sentence reports. Correct? Correct. And once the third and fourth pre-sentence reports came out, irrespective of the judge's entry, the probation department still did not give the enhancement. And Mr. Abdullah still was not cooperating in providing full financial support, right? Well, we would disagree with that. Based on the revised PSR, he did provide them all the documents pursuant to their report. And I would... Judge, I've never seen a case where a defendant was seeking acceptance of responsibility and the district court had to subpoena records from the IRS. Well, I understand that... It would hire its own forensic accountant. Correct. And an accountant was appointed by the court to determine if the probation department's PSR was accurate. And there was conflicting views between the And if I could just reserve the balance of my time. Thank you, Your Honors. Boyle? Good morning, Your Honors. May it please the court, counsel. My name is Catherine Boyle on behalf of the United States. As Your Honors have noted, this is a straightforward waiver case. Mr. Abdullah's claims on appeal fall within the scope of the appellate waiver in his plea agreement, as he acknowledges, and he entered that waiver knowingly and voluntarily. The waiver stated that the defendant waives all rights to appeal and or collaterally attack his conviction or sentence. That waiver included a waiver of the right to challenge the manner and or method the district court used to determine the sentence. And the agreement also in particular stated that the district court would not be bound by any recommendation made by any party. And it said that Mr. Abdullah would not be able to withdraw the plea due to an objection to the calculation of the sentencing guidelines. The record demonstrates that Mr. Abdullah understood the plea agreement and these waiver provisions. At the change of plea hearing, the district court conducted a proper rule 11 plea colloquy, and the district court paid particular attention to ensuring that Mr. Abdullah understood the appeal and collateral attack waivers in the plea agreement. Throughout that hearing, Mr. Abdullah repeatedly affirmed that he understood the plea agreement, waiver, and the proceedings generally. On one occasion where he didn't, which involved a question about sentencing guidelines, he asked a question of the court and received more information, which shows that he was very well able to clarify portions of the proceedings which he didn't understand. It's also important that not only did Mr. Abdullah and his attorney affirm his understanding at the change of plea proceeding, his attorney went on to affirm later in those hearings in February 2020 and beyond that Mr. Abdullah had understood the change of plea proceedings that had occurred in July of 2019. So over a period of seven months, there was no allegation in the district court that Mr. Abdullah had not understand what happened at the change of plea. Ms. Boyle, were you the prosecutor in this case? Did you handle it from the beginning? I did not, Your Honor. The reason I ask, you may not know the answer to this question. Usually in these cases like this, a magistrate judge at the arraignment or the initial appearance will ask if the defendant needs an interpreter or feels the need for an interpreter. And I just wondered if that happened here, but you probably don't know one way or the other. Your Honor, I don't know that for sure, but I do know that Mr. Toner, Mr. Abdullah's attorney in district court, represented that the first time he had heard of a request for an interpreter was the Friday preceding the February 3rd, 2020 hearing. So it would have been about January 28th, I believe. So that would suggest to me that there had not been a request for an interpreter earlier in the proceedings, although I would want to confirm that Mr. Toner had been counsel before as well. And I'm sure I didn't look at the docket to know whether or not the defendant was even represented by counsel at the initial appearance. So I just didn't. I was just curious if you knew. No, Your Honor, but from the record, it does appear that the first time the issue of an interpreter was heard was the Friday before the February 3rd, 2020 hearing. Importantly here, as Your Honors have noted, on appeal, Mr. Abdullah's only argument that he didn't knowingly and voluntarily enter this plea agreement is that the waiver itself of the entire plea agreement couldn't have been knowingly and intelligently made because he couldn't have anticipated an issue that materialized at the sentencing hearing. And this argument is relegated to a footnote. And Mr. Abdullah also notes that neither probation nor the government, but both in the police, I apologize, Your Honor, but both in that plea agreement and its discussion with the court, Mr. Abdullah had affirmed that he understood that he waived claims related to a sentence and the manner in which it was determined. And he also said that he understood the court wasn't obligated to follow the recommendations of the parties. And finally, Mr. Abdullah agreed both in the plea agreement and at the change of plea hearing that he wouldn't be allowed to withdraw his guilty plea because of an objection to the sentencing guidelines or the district court's findings or rulings. Tellingly, even on appeal, Mr. Abdullah didn't ask the plea agreement be made null and void. He only disclaims the waiver, which was his burden. Mr. Abdullah thus seeks to keep the benefit of entering the plea agreement, which involved the dismissal of four other counts of filing false tax returns and tax evasion, but do away with the burden of the appellate waiver. What Mr. Abdullah doesn't say with regard to his need for an interpreter was important. He made no claim in district court that a language barrier prevented him from understanding the plea proceedings. And as I've noted, even on appeal, he still disclaims that he didn't understand the plea proceedings as a whole. Finally, Mr. Abdullah also doesn't allege that received ineffective assistance of counsel, the only type of claim that the waiver allows him to bring. Because Mr. Abdullah's claims fall within the scope of the appellate waiver in the plea agreement, and he knowingly and voluntarily entered that plea agreement, the waiver is effective. Your honors, I did have one point I wanted to correct in our brief. On page four of our brief, we note that the tax loss was $366,000, and later we note that it was $176,000. The $176,000 is the later determined calculation that the parties in the court agreed upon. $366,000 was an initial number, so the $176,000 number is correct. If your honors have no further questions, we'll rest on the arguments in our brief. Just one quick question, please, Ms. Boyle. If we were to get past the waiver, I'm a little confused about the treatment of this house economically . It was apparently listed at $237,000, but sold at $120,000. Can you illuminate what role that plays in the sentencing decision? Yes, your honor. The district court did note that it thought that there might be discrepancies regarding the ownership and valuation of the house on Geneva Road in Peoria. The court made clear, when it was determining whether the obstruction of justice enhancement applied, that it was relying essentially on the failure to provide certain information to probation regarding income and the sort of swing in assets we see when Mr. Abdallah does eventually provide information from the third report to what was the fourth revised report, but actually the fifth iteration of the report. The court noted that it had suspicions about the correctness of the valuation of the house, and the court said that it was surprised because, although first he thought the house might have been sold for a value less than it was worth, and he also said that should had the house actually been sold, he was surprised not to see the value of that asset reflected in Mr. Abdallah's financial assets or the value of that sale. But although the court expressed all of these suspicions regarding whether the house had been dealt with forthrightly in the PSR, the court emphasized that these suspicions regarding the idea that Mr. Abdallah's assets, which totaled nearly $400,000 in the final version, were not entirely correct, were not what he was relying on for the obstruction enhancement. Essentially, he was relying on, instead, the swing in assets and this failure to provide certain information. Although I do think it would have been appropriate for the court to look at certain discrepancies with the house in that there was an apparently under market sale of the house between the discovery of Mr. Abdallah's criminal conduct and the execution of a search warrant and his indictment. This sale occurred at that time, and the court appropriately noted it seemed suspicious that he didn't see either the proceeds of the sale or any definitive proof of the transfer of ownership in Mr. Abdallah's assets. So the sale was after the search but before the indictment. That's what I believe based on the record, Your Honor. Okay, thank you. You're welcome. Counselor, do you know if the defendant is a citizen of the United States? Your Honor, I believe he said he was at either the sentencing or change of plea hearing. Thank you. You're welcome. If Your Honors have no further questions, we'll rest on the arguments in our brief and ask that you affirm the judgment of the district court. Thank you, Your Honors. Mr. Azari, do you have anything for us? Thank you, Judge. Your Honors, the language issue is so important, touches on multiple issues that were argued. He had some modest facility with the English language, but the court had every resource and opportunity to remedy this situation with a very simple assignment of a foreign language interpreter that was readily available. The court had more precise and thorough means of determining what level Mr. Abdallah actually spoke English. For those reasons, we would ask this court to reverse the sentence of the district court and remand the case for re-sentence. Thank you. Thanks to both counsel on the cases taken under advisement.